**LAW OFFICE OF PETER C. PEREZ**
Suite 802, DNA Building
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone No. (671) 475-5055/7
Facsimile No. (671) 477-5445

**LAW OFFICE EDWARD C. HAN**
Suite 309, DNA Building
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone: (671) 477-8890
Facsimile: (671) 477-8890

*Attorneys for Plaintiffs*

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| DANSIM NO, GWANGYE NOH, JUNG SOO MOON, JUHO MOON, MIDAN NOH, and SURAH WEE,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNNY SIDE UP GUAM, INC., OCEAN JET CLUB, INC., DONGBU INSURANCE CO., LTD., and DOES 1-15,<br><br>Defendants. | CIVIL CASE NO. 16-00022<br><br>**COMPLAINT** |

Plaintiffs, by and through their attorneys, for their claims against the defendants, jointly and severally, plead and allege as follows:

## **JURISDICTION**

1. Jurisdiction is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exclusive of interest and costs exceeds $75,000.00 and this action involves plaintiffs who are citizens or subjects of South Korea and defendants who are citizens of Guam.

## PARTIES

2. Plaintiff Dansim No ("Dansim") is a citizen and resident of Korea.

3. Plaintiff Gwangye Noh ("Gwangye") is a citizen and resident of Korea.

4. Plaintiff Jung Soo Moon ("Jung Soo") is a citizen and resident of Korea.

5. Plaintiff Juho Moon ("Juho") is a citizen and resident of Korea.

6. Plaintiff Mi Dan Noh ("Midan") is a citizen and resident of Korea.

7. Plaintiff Surah Wee ("Surah") is a citizen and resident of Korea.

8. Defendant Sunny Side Up Guam, Inc. ("SSU") is a corporation organized and operating under the laws of Guam, having its principal place of business in Guam. Upon information and belief, SSU conducts business directly or through or as one of its "affiliated entities" including "Ocean Jet Club, Inc." ("OJC").

9. Defendant Ocean Jet Club, Inc. is, upon information and belief, a corporation organized and operating under the laws of Guam, having its principal place of business in Guam, and is an affiliated entity of SSU.

10. DOE defendants 1-5 are affiliated entities, employees and/or agents of SSU and are residents of Guam (SSU, OJC and DOE defendants 1-5 are hereinafter collectively referred to as the "SSU defendants").

11. Defendant Dongbu Insurance Co., Ltd. ("Dongbu") is an insurance company authorized to do business on Guam that had issued policies of insurance to defendants which were in full force and effect at all times pertinent herein, specifically including but not limited to March 15, 2014.

12. DOE defendants 6-10 are insurance companies authorized to do business on Guam that had issued policies of insurance to defendants which were in full force and effect at all times pertinent herein, specifically including but not limited to March 15, 2014.

13. Plaintiffs are currently unaware of the true names, capacities, and identities of DOE defendants 11-15, and therefore, sue these defendants by such fictitious names and specifically reserve the right to amend this Complaint to show their true names and capacities when more fully ascertained. DOE defendants 11-15 are liable to in some manner in whole or in part for damages to Plaintiffs.

**FACTS**

14. The Plaintiffs are all related to each other. Dansim No and Jung Soo Moon are husband and wife. Juho Moon is their son. Gwangye Noh, Midan Noh, and Dansim No are sisters. Surah Wee is the daughter of Midan Noh.

15. In or around March 2014, the Plaintiffs travelled to Guam for a family vacation to celebrate the 60th birthdays of Plaintiffs Jung Soo Moon and Gwangye Noh. In the Korean culture, a person's 60th birthday is an important milestone and is traditionally celebrated.

16. On the last day of their vacation, on or about March 15, 2014, Plaintiffs purchased tickets at the OJC office for a 1:30 p.m. parasailing ride.

17. OJC personnel picked up Plaintiffs in an OJC bus and transported Plaintiffs to the Hagatna Boat Basin. Upon arrival, OJC employees directed Plaintiffs onto a boat operated by OJC personnel.

18. OJC personnel directed all of the Plaintiffs onto one OJC boat. The boat did not have cushions for passengers to sit on or seatbelts to secure passengers.

19. At approximately 1:30 p.m., the OJC boat left shore. There were at least two OJC employees on the boat.

20. Once OJC personnel drove the boat from shore, the ocean conditions became extremely rough and choppy.

21. OJC personnel continued to drive the boat away from the shore despite the dangerous conditions of the ocean.

22. OJC personnel began driving the boat at a high rate of speed over the rough and choppy ocean conditions and over big waves. Plaintiffs tried to hold on to something to protect themselves from the impacts, but due to a lack of comfort or safety equipment within the boat, were unable to and were thrown within the boat by the ocean waves and wild boat driving.

23. The conditions of the ocean and the speed at and manner in which the boat was driven caused the boat to be shaken violently and the Plaintiffs to be launched into the air and jostled within the boat.

24. As the wild driving continued, and as the Plaintiffs continued to be shaken, jostled, launched into the air, and to be placed in fear for their safety and the safety of their family members. Plaintiffs including Jung Soo Moon and Juho Moon repeatedly requested to the OJC employees to slow the boat down. Plaintiffs Surah Wee and Midan Noh screamed for the OJC employees to slow the boat down.

25. Said employees ignored Plaintiffs' requests that they slow the boat down but instead laughed, continued operating the boat at a high rate of speed, and even accelerated the speed of the boat as if trying to catch up to another boat that was ahead of them, like they were in a race.

26. Plaintiffs were launched airborne repeatedly and they landed back into the boat violently and repeatedly causing injuries to Plaintiffs.

27. Plaintiff Dansim No told the driver that she couldn't breathe but the driver ignored her and kept driving the boat.

28. Plaintiffs Dansim No and Gwangye Noh were hurt and had to lie on the floor of the boat.

29. Plaintiffs Jung Soo Moon and Juho Moon kept telling the OJC employees to "go back!", to return to shore. The OJC employees ignored them. After an extended delay, and after the OJC employees appeared to contact their superiors, only then did the OJC employees begin to head back to shore.

30. As the boat was finally heading in the direction of shore, Plaintiff Jung Soo Moon told OJC employees that the Plaintiffs were hurt, needed help, and he requested that the OJC employees call 911 but the OJC employees refused.

31. Despite being told by Plaintiffs that they needed 911-assistance, OJC employees delayed returning to shore apparently until they received direction from their superiors.

32. When OJC employees brought the boat back to shore, Plaintiffs repeated their requests that 911 be called.

33. Despite Plaintiffs' repeated requests even on shore, OJC employees refused to call 911.

34. Instead, OJC employees insisted that Plaintiffs Dansim No and Gwangye Noh wait on an OJC bench for approximately 45 minutes until OJC personnel finished tending to a large Japanese tourist group that was boarding a bus. Plaintiffs Dansim No and Gwagye Noh were incapacitated as they lay on the OJC benches. At that time the weather was raining heavily and was windy. The benches were not sheltered and Plaintiffs were made to wait, while injured and emotionally traumatized, without protection, exposed to the elements.

35. Approximately 1 hour later, OJC employees decided to lift Plaintiff Dansim No into an OJC company van.

36. OJC employees then drove Plaintiff Dansim No away, leaving Plaintiff Gwangye Noh incapacitated lying on an OJC bench at the Hagatna Boat Basin.

37. Plaintiffs Jung Soo Moon, Juho Moon, and Midan Noh then attempted to place Plaintiff Gwangye Noh into their rental car and attempted to follow the OJC van.

38. The OJC employees decided to take Plaintiff Dansim No to the FHP Clinic. While at FHP, an OJC employee told Plaintiff Dansim No's family members to take her out of the van. At the time, she was in the van incapacitated, unable to move.

39. Meanwhile, Plaintiff Gwangye Noh also arrived at the FHP clinic. Upon arrival, FHP advised that they were not equipped to handle Plaintiff Gwangye Noh's injuries and that she needed to be brought to the hospital.

40. While at FHP, Plaintiffs encountered a local Korean who called 911 on their behalf but who, upon information and belief, was not aware that Plaintiff Dansim No remained incapacitated in the OJC van.

41. One ambulance arrived and transported Plaintiff Gwangye Noh to the hospital.

42. The OJC van then took Plaintiff Dansim No to the hospital.

43. Plaintiffs Dansim No and Gwangye Noh arrived at the hospital, were treated on an emergency basis, admitted, and subjected to numerous medical tests and procedures.

44. Later that evening, OJC personnel, including upon information and belief, the OJC President, OJC Marketing Director, and OJC Director of Operations met with Plaintiff Dansim No and other family members and told them that "the incident was totally their fault" and that "they would take care of everything". The OJC personnel paid Plaintiff Gwangye Noh $1200.00 toward her medical expenses.

45. Because the incident occurred on the last day of their trip and they had limited funds and limited available credit on their credit cards, and knowing that medical care in Guam would be significantly more expensive than in Korea, OJC's promise that they would take care of everything gave Plaintiffs some relief.

46. Two days later, Plaintiffs received a letter from OJC's lawyer advising them that "Ocean Jet Club will not be responsible for the costs of fees of any medical services provided by

Guam Memorial Hospital or for any travel expenses, costs and fees you may incur in returning to Korea."

47. Upon receiving the letter, Plaintiffs were in shock. They were now placed in the position of having to ensure they obtained, received, and paid for necessary medical care for the injuries they all received.

48. Plaintiffs Dansim No and Gwangye Noh were each required to be transported by air ambulance to Korea for their medical needs. Plaintiff Dansim No was transported by air ambulance. Plaintiff Gwangye Noh was unable to travel by air ambulance and was instead required to travel by regular commercial carrier at great pain, discomfort, and inconvenience to herself.

49. As a result of her injuries, Plaintiff Dansim No remained hospitalized in Guam until she was transported by air ambulance to Korea. In Korea, she continued to require ongoing medical care. She suffered fractures to her spine, injuries to her back and body, and other physical and emotional injuries and pain and suffering injuries which continue to the present. Korea medical providers determined that she was permanently disabled.

50. As a result of her injuries, Plaintiff Gwangye Noh required hospitalization in Guam. In Korea, she continued to require ongoing medical care. She suffered fractures and injuries to her body, and other physical and emotional injuries and pain and suffering injuries which continue to the present.

51. As a result of the incident, Plaintiffs Jung Soo Moon, Juho Moon, Midan Noh, and Surah Wee each suffered physical and emotional injuries and pain and suffering injuries which continue to the present.

52. All Plaintiffs have incurred economic losses as a result of the incident.

53. All of the Plaintiffs were present and witnessed the injuries and harm suffered by their respective family members and experienced the shared traumas, worries, fears, anxieties, shocks, and harms caused by the incident which continue to the present.

**FIRST CAUSE OF ACTION: NEGLIGENCE**

54. Plaintiffs reallege the allegations contained in paragraphs 1-53 as if fully stated herein.

55. Having undertaken for pay the responsibility of driving Plaintiffs on a parasailing boat ride the SSU defendants had a duty to exercise reasonable care in conducting the March 15, 2014 outing.

56. The SSU defendants failed to use reasonable care in conducting the March 15, 2014 outing and were negligent and acted in disregard of the safety of Plaintiffs.

57. The SSU defendants' negligence and failure to exercise reasonable care in conducting the outing included but is not limited to:

   a. Failing to provide warnings to Plaintiffs of potentially dangerous conditions both prior to and during the operation of the boat.

   b. Failing to equip the boat with adequate comfort or safety features to protect passengers from harm.

   c. Operating the boat in an unsafe manner.

   d. Subjecting Plaintiffs to dangerous ocean and boat driving conditions.

   e. Refusing or delaying returning to shore upon knowing or having should have known that Plaintiffs or members of Plaintiffs' party were injured.

   f. Failing to render proper aid to Plaintiffs who were injured while in their care.

   g. Refusing and failing to call 911.

   h. Requiring Plaintiffs to wait on shore knowing or having should have known that Plaintiffs were injured and in need of aid including and in requiring Plaintiffs Dansim

No and Gwangye Noh to remain on an OJC bench for an extended time, while injured and incapacitated, unprotected, exposed to the elements.

    i. Moving Plaintiff Dansim No into an OJC van, while injured.

    j. Transporting Plaintiff Dansim No to a facility that was not equipped to respond to her injuries.

    k. Departing the OJC Hagatna Boat Basin location and leaving Plaintiff Gwangye Noh on an OJC bench while injured and incapacitated, unattended and without medical care.

    l. Undertaking the responsibility of rendering aid to Plaintiffs but failing to use reasonable care in carrying out that responsibility.

    m. Undertaking the responsibility to cover Plaintiffs' medical costs and fees and thereafter disavowing their responsibility.

    n. Failing to protect Plaintiffs from harm.

58. The SSU defendants' disregard of their duties proximately caused injuries and losses to Plaintiffs in amounts subject to proof at trial.

**SECOND CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

59. Plaintiffs reallege the allegations contained in paragraphs 1-58 as if fully stated herein.

60. The SSU defendants' conduct was extreme and outrageous.

61. The SSU defendants should have realized that their conduct posed an unreasonable risk of causing distress that might result in illness or bodily harm to the Plaintiffs.

62. As a result of the SSU defendants' conduct, Plaintiffs sustained illness or bodily harm losses and injuries, and/or were placed in fear, nervousness, anxiety, worry, and mental suffering for themselves and for the other Plaintiffs, all of whom are family members.

63. As a result of the SSU defendants' conduct Plaintiffs have suffered severe emotional distress and mental and emotional pain and suffering, in amounts subject to proof at trial.

### THIRD CAUSE OF ACTION: RES IPSA LOQUITUR

64. Plaintiffs reallege the allegations contained in paragraphs 1-63 as if fully stated herein.

65. The SSU defendants' conduct causing the injuries and harm to Plaintiffs is a type that would not normally occur unless the SSU defendants were negligent.

66. The instrumentalities proximately causing the injuries and harm to Plaintiffs were in the SSU defendants exclusive control at the time of the infliction of the injuries and harm.

67. The factual circumstances afford sufficient evidence in the absence of explanation that the injuries and harm arose from the SSU defendants' want of ordinary care and that such negligence was the direct and proximate cause of the injuries and harm to the Plaintiffs.

68. The SSU defendants' negligence directly and proximately caused injuries and losses to Plaintiffs in amounts subject to proof at trial.

### FOURTH CAUSE OF ACTION: LOSS OF CONSORTIUM

69. Plaintiffs reallege the allegations contained in paragraphs 1-68 as if fully stated herein.

70. At all times mentioned herein, Plaintiff Jung Soo Moon was and now is the husband of Plaintiff Dansim No.

71. As more thoroughly described above, Plaintiff Jung Soo Moon's wife, Dansim No, was severely injured, incapacitated, and subjected to ongoing pain and suffering over a prolonged period of time continuing to the present by the conduct of the SSU defendants.

72. Prior to the incident, Plaintiffs Jung Soo Moon and Dansim No enjoyed a rich and fruitful married life, engaging in all of the activities that happily married couples engage in.

73. As a result of the injuries, incapacitation, and ongoing pain and suffering caused by the SSU defendants Plaintiff Dansim No was unable to and continues to be restricted in being able to provide care, comfort, consortium, and services that she previously provided to Plaintiff Jung Soo Moon.

74. As a result of the SSU defendants' conduct, Plaintiff Jung Soo Moon has been denied the consortium and services of his wife Plaintiff Dansim No and the comfort and happiness that he enjoyed in her society and companionship has been impaired all to his damage in amounts subject to proof at trial.

**FOURTH CAUSE OF ACTION: DIRECT ACTION AGAINST PRINCIPALS AND EMPLOYERS BASED UPON AGENCY LIABILITY AND/OR RESPONDEAT SUPERIOR**

75. Plaintiffs reallege the allegations contained in paragraphs 1-74 as if fully stated herein.

76. SSU and/or some of the SSU defendants are the principal and/or employer of the "other" SSU defendants.

77. The "other" SSU defendants are the agents and/or employees of SSU and/or some of the SSU defendants acting within the scope of employment and/or the agency at the time they committed the conduct complained of herein.

78. In addition to being directly liable to Plaintiffs, the SSU defendant principals/employers are also vicariously liable to Plaintiffs for the conduct of the other SSU defendant agents/employees under theories of agency and respondeat superior.

# FIFTH CAUSE OF ACTION: DIRECT ACTION AGAINST DEFENDANTS' INSURERS

79. Plaintiffs reallege the allegations contained in paragraphs 1-78 as if fully stated herein.

80. Defendant Dongbu and/or DOE defendants 6-10 are the insurers, providers of policies of insurance, and/or entities engaged in insurance-related businesses that had issued insurance coverage, policies of insurance, and/or other insurance-related coverage to each or all of the defendants which were in full force and effect at all times pertinent herein, specifically including but not limited to March 15, 2014 covering the defendants' conduct complained of herein that directly caused the injuries and harm to Plaintiffs complained of herein.

81. As the insurers, providers of policies of insurance and/or entities engaged in insurance-related businesses that had issued insurance coverage, policies of insurance, and/or other insurance-related coverage to each or all of the defendants they are liable to Plaintiffs for all of the injuries and harm complained of herein.

82. Pursuant to 22 G.C.A. §18305, Plaintiffs have a right of and hereby assert a direct action against defendant Dongbu and/or DOES 6-10 on any policy or policies of liability insurance issued to defendants in effect on or about March 15, 2014, and Plaintiffs have a vested right in this policy or these policies, which accrued at the time of Plaintiffs' losses and injuries.

# SIXTH CAUSE OF ACTION: PUNITIVE DAMAGES

83. Plaintiffs reallege the allegations contained in paragraphs 1-82 as if fully stated herein.

84. The SSU defendants' conduct as described herein was wilful, wanton, and/or outrageous, entitling Plaintiffs to an award of punitive damages in amounts subject to proof at trial.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial of six (6) persons on all issues that may be tried as a matter of right by a jury.

## PRAYER

**WHEREFORE,** Plaintiffs pray for the following:

1. That they be awarded judgment for damages according to proof, but not less than $5,000,000.00 each, from each Defendant, for each injury.

2. That they be awarded punitive damages according to proof.

3. That they be awarded their costs.

4. That they be awarded pre-judgment interest.

5. That they be awarded post-judgment interest.

6. For such other and further relief as the court deems appropriate.

Dated this 11th day of March, 2016.

　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　**PETER C. PEREZ, ESQ.**
　　　　　　　　　　　　　　　　　　　　　*Counsels for Plaintiffs*